UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL F.,

                  Plaintiff,                  **DECISION AND ORDER**

     v.

                                     1:22-CV-00292 EAW

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Daniel F. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 12) is granted, and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on January 3, 2019. (Dkt. 5 at 26, 193-99).[1] In his application, Plaintiff alleged disability beginning May 1, 2014. (*Id.* at 26, 193). Plaintiff's application was initially denied on April 8, 2019. (*Id.* at 26, 77). At

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Plaintiff's request, a telephone hearing was held before administrative law judge ("ALJ") Michael Stacchini on May 12, 2020.  (*Id.* at 26, 45-76).  On December 24, 2020, the ALJ issued an unfavorable decision.  (*Id.* at 26-39).  Plaintiff requested Appeals Council review; his request was denied on June 28, 2021, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 12-17).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*.

§ 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.      The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2019.  (Dkt. 5 at 28).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity during the period from his alleged onset date of May 1, 2014, through his date last insured of December 31, 2019.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: obesity, peripheral neuropathy, cervical degenerative disc disease, obstructive sleep apnea, and personality disorder.  (*Id*.).  The ALJ further found that Plaintiff's medically determinable impairments of Bell's palsy, mastoiditis, and Eustachian tube disorder were non-severe and that his condition of carpal tunnel syndrome was not medically determinable.  (*Id*. at 28-29).

- 4 -

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 29). The ALJ particularly considered the criteria of Listing 1.04, 3.10, 12.02, 12.08, and Plaintiff's obesity in reaching his conclusion. (*Id.* at 29-31).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except as follows:

> [Plaintiff] will be provided regularly scheduled breaks of 15 minutes in the morning and afternoon and half hour to hour midday; he is limited to occasionally climbing ramps and stairs and no climbing ladder ropes or scaffolds; he is limited to occasionally balancing, stooping, kneeling, crouching and crawling; he should avoid unprotected heights and hazardous; he is limited to understanding remembering and carrying out simple routing tasks with regularly scheduled breaks at 2 hour intervals, with decision making and changes in work setting related to simple routine tasks, and is limited to superficial and brief interaction with the general public and with occasional interaction with coworkers and supervisors but without tandem tasks.

(*Id.* at 31). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 37).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of assembler and inspector. (*Id.* at 38). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 39).

II.    **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ failed to properly assess the medical opinion evidence, and (2) the ALJ erred in crafting an unsupported RFC finding.  (Dkt. 9 at 15-29).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.  Evaluation of Medical Opinion Evidence

Plaintiff contends that in determining his mental RFC, the ALJ erred in concluding that the medical opinions of plaintiff's treating psychiatrist, consultative examiner, and veteran's disability examiner were "not persuasive," while finding the mental impairment opinions of state agency medical record review consultants persuasive.   The Court disagrees.

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id.*  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support

or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec*., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion.

20 C.F.R. § 404.1520c(b)(2).   The ALJ may—but is not required to—explain how he considered the remaining factors.   *Id*.

In connection with his assessment of Plaintiff's mental RFC, the ALJ addressed medical opinions from Robert Anderson, Ph.D.; consultative examiner Amanda Slowik, Psy.D.; veterans' disability examiner Azariah Eshkenazi, M.D.; and state agency consultants T. Bruni, Ph.D., and O Fassler, Ph.D.

### 1. Dr. Anderson

Plaintiff saw Dr. Anderson beginning in October of 2009.   (Dkt. 5 at 545).   Dr. Anderson issued two opinions regarding Plaintiff's limitations.     The first, a psychiatric/psychological impairment questionnaire completed in May 2017 (*id.* at 545-550), indicated Plaintiff's diagnosis of generalized anxiety disorder and included a prognosis that "Veteran is not likely to be able to obtain and maintain employment, especially in his career field." (*Id.* at 545).   Dr. Anderson noted that Plaintiff's impairment in concentration and focus continued to increase and that Plaintiff presented a risk to coworkers and customers.   (*Id.* at 549).   Dr. Anderson indicated that he did not believe that Plaintiff would be capable of performing gainful employment.   (*Id.*).   A second opinion was issued in June of 2017 (*id.* at 560-562), and it described Plaintiff's struggles with an increase in the intensity of his symptoms of anxiety and depression (*id.* at 560).   Although Dr. Anderson noted that Plaintiff's mental status was within normal limits and presents as stable and low risk for harm to self or others, (*id.* at 561), he opined that Plaintiff's generalized anxiety disorder and co-morbid major depressive disorder impaired his ability

to work in any environment requiring any responsibility or consistency and reliability (*id.* at 562).

The ALJ discussed Dr. Anderson's treatment records in his decision and explained his reasoning in finding Dr. Anderson's opinions "not persuasive" as follows:

> Robert Anderson, PhD wrote in June 2017 that [Plaintiff] had generalized anxiety disorder, and stated that [Plaintiff] would not be likely to "obtain and maintain employment, especially in his career field" (Ex. 12F, pg. 1). Moderate to marked limitations in all of the "B" criteria subdomains were given (Id., pgs. 3-4). A lack of joy from accomplishments was given, and Dr. Anderson indicated that [Plaintiff] would be a risk to co-workers, customers and facilities "as a result of signs and symptoms" of anxiety disorder (Id., pg. 5). In another letter from this time, [Plaintiff] was suggested to be unable to work due to impairment in the ability to "perform work that requires any responsibility or consistency and reliability", with a lack of motivation, focus, and concentration (Ex. 13F, pgs. 11-12). Dr. Anderson wrote that [Plaintiff] was "too concerned about how supervisors and co-workers are judging him and documenting non-existent negative actions in order to get him fired" (Id., pg. 12). These opinions are not persuasive, as they are focused on [Plaintiff's] capacity for work in his prior position and is conclusory as to [Plaintiff's] suitability for other work in the national economy, an assessment within the purview of the vocational expert for suggested residual functional capacities. Nor is it supported by [Plaintiff's] conservative course of treatment or mental status examinations set forth in detail above.

(Dkt. 5 at 36).

Plaintiff generally contends that it was error for the ALJ to credit the opinions offered by non-examining physicians over Dr. Anderson's opinion. However, Dr. Anderson's opinion is not entitled to any special deference, and it is well-settled that the opinions of state agency medical consultants may serve as substantial evidence supporting an RFC. *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (opinion of state agency consultant "may constitute substantial evidence in support of residual functional capacity findings" (citation omitted)); *see also Woytowicz v. Comm'r of Soc. Sec.*, No. 5:15-CV-

0906 (GTS/WBC), 2016 WL 6427787, at *5 (N.D.N.Y. Oct. 5, 2016) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."), *adopted*, 2016 WL 6426385 (N.D.N.Y. Oct. 28, 2016).  To the extent Plaintiff contends that the Commissioner's decision must be reversed because the ALJ credited the decision of non-examining medical experts over the opinions offered by Dr. Anderson, that argument is not supported by the law.

In addition, Plaintiff argues that the ALJ placed undue emphasis on Dr. Anderson's statement that Plaintiff would "not likely to be able to obtain and maintain employment, especially in his career field," by focusing only on the latter portion of the statement regarding Plaintiff's ability to return to his prior work.  But the ALJ directly quoted Dr. Anderson's statement, which itself emphasized Plaintiff's ability to perform work in his prior career field.  Moreover, as Plaintiff acknowledges, his ability to obtain employment is an issue reserved to the Commissioner.  *See Kathryn D. v. Comm'r of Soc. Sec.*, No. 19-CV-1550-LJV, 2021 WL 195342, at *2 (W.D.N.Y. Jan. 20, 2021) ("If an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a medical opinion.").  While Plaintiff speculates that Dr. Anderson's opinion "concerning plaintiff's ability to maintain employment undoubtedly referred to the likelihood of excessive periods that plaintiff would be off task and likely excessive absences," (Dkt. 9 at 21), such interpretation is speculative and not clearly reflected by Dr. Anderson's opinions.  To the extent that Plaintiff's argument suggests that the ALJ overlooked other portions of Dr.

Anderson's opinion, it is well-settled that "'[a]n ALJ is not required to discuss every piece of evidence submitted,' and the 'failure to cite specific evidence does not indicate that such evidence was not considered.'" *Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)); *Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-00502 EAW, 2020 WL 1815754, at *5 (W.D.N.Y. Apr. 10, 2020) ("The ALJ is not required to reconcile explicitly every conflicting shred of medical testimony.  Nor is the ALJ required to mention or discuss every single piece of evidence in the record." (internal quotations and citation omitted)). In other words, the ALJ's failure to specifically discuss every detail of Dr. Anderson's opinion does not demonstrate that it was ignored, as Plaintiff suggests, and does not serve as a basis for remand.

Finally, it was not error for the ALJ to consider Plaintiff's conservative course of mental health treatment as a basis for not finding Dr. Anderson's opinion more persuasive. *See Troy F. v. Comm'r of Soc. Sec.*, No. 1:21-CV-362-DB, 2023 WL 3645487, at *8 (W.D.N.Y. May 25, 2023) (finding appropriate for ALJ to consider plaintiff's "routine, limited, and conservative outpatient mental health treatment" and relatively benign mental examinations "including normal cognitive functioning, cooperative behavior, good eye contact, no psychomotor agitation, normal speech, intact memory and concentration, and appropriate thought content and processes" (internal quotation marks omitted)); *Kentrel J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-197-DB, 2023 WL 2601971, at *8 (W.D.N.Y. Mar. 22, 2023) (holding that ALJ properly considered that "there was no evidence of any psychiatric hospitalizations or emergency room visits, and, overall, the record showed that

Plaintiff had received routine and conservative mental health treatment, and his mental health symptoms were generally well controlled with medication" in assessing opinion evidence); *Thomas v. Comm'r of Soc. Sec.*, 479 F. Supp. 3d 66, 89 (S.D.N.Y. 2020) (courts "have specifically recognized that a pattern of conservative medical treatment, such as mental health treatment with medication and therapy but not in-patient or hospitalization care, is a proper factor for an ALJ to consider in evaluating a claimant's credibility." (internal citation and quotation marks omitted)); *Clinton v. Saul*, No. 19-CV-6114F, 2020 WL 5365996, at *7 (W.D.N.Y. Sept. 8, 2020) (ALJ properly considered that plaintiff did not endorse mental health concerns, and examinations were unremarkable). The ALJ noted that Plaintiff had good response to treatment with minimal findings on clinical and mental status examinations, with no more than minimal side effects from any medication. This was an appropriate consideration.

The Court accordingly finds no error in the ALJ's assessment of Dr. Anderson's opinions.

### 2.  Dr. Slowik

Consultative examiner Amanda Slowik, Psy.D., examined Plaintiff on March 12, 2019. (Dkt. 5 at 431-35). Dr. Slowik noted that Plaintiff had never been hospitalized and was currently seeing Dr. Anderson on a biweekly basis. (*Id.* at 431). She opined that his psychiatric issues may significantly interfere with his ability to function on a daily basis and recommended that he continue with psychological treatment and evaluation. (*Id.* at 435). In finding Dr. Slowik's opinions not persuasive, the ALJ stated:

> Dr. Slowik opined that [Plaintiff's] ability to understand, remember, and apply simple directions and instructions and sustain an ordinary routine is

mildly to moderately limited; the ability to understand, remember, and apply complex directions and instructions, interact adequately with supervisors, co-workers, and the public, and regulate emotions is moderately to markedly limited; and the ability to use reason and judgment to make work-related decisions and sustain concentration is moderately limited (Ex. 3F, pg. 4). This opinion is not persuasive. Initially, as noted by the ddc medical consultants (Ex. 2A, 3A), it is not well supported by the examination. Moreover, it is not consistent with [Plaintiff's] independent activities of daily living with intact relationships, his course of treatment or his mental status examinations detailed above in his contemporaneous treatment records with largely stable symptoms. As such, the opinion is not persuasive.

(Dkt. 5 at 35-36).

To the extent that Plaintiff argues that Dr. Slowik's reports and opinions demonstrate that the ALJ's analysis of Dr. Anderson's medical opinions was incorrect, Plaintiff's argument is misplaced because any conflicts between medical opinions are expressly for the ALJ to resolve. *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 648-49 (W.D.N.Y. 2020) ("Moreover, to the extent the two opinions conflicted, it was within the ALJ's discretion to resolve the conflict."); *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 760 (S.D.N.Y. 2018) ("It is within an ALJ's discretion to resolve 'genuine conflicts in the medical evidence.'" (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

And much like the ALJ's assessment of Dr. Anderson's opinions, it was not error for the ALJ to assess the opinion against the conservative nature of treatment. While Plaintiff argues that his receipt of therapy with Dr. Anderson on at least 62 occasions over a period of almost eight years is "extreme," the ALJ aptly noted that Plaintiff did not have

psychiatric hospitalizations or intensive outpatient treatment and responded well to treatment.  No error is accordingly demonstrated.

In addition, it is well-settled that an ALJ may consider the consistency of a claimant's activities of daily living with other evidence of record when evaluating credibility and determining the RFC.  *See, e.g., Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018).  In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014).  This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.*  In his decision, the ALJ noted that Plaintiff cares for his animals, can prepare sandwiches for himself, performs some yard work and housework, goes outside daily either walking or driving a car, can shop in stores once or twice per month for five to ten minutes, manages money, and performs hobbies including lifting weights when available, playing video games, watching television, and reading. (Dkt. 5 at 33).  The ALJ's comparing of those activities of daily living to restrictions set forth in medical opinions was appropriate. *Rusin v. Berryhill*, 726 F. App'x 837, 840-41 (2d Cir.

2018) (finding it proper for ALJ to consider activities of daily living when evaluating medical opinion evidence and claimant's testimony in determining RFC).

For these reasons, no error has been demonstrated with respect to the ALJ's assessment of Dr. Slowik's opinions.

### 3. Dr. Eshkenazi

Azariah Eshkenazi, M.D., conducted a psychiatric evaluation of Plaintiff in July 2016. (*Id.* at 551-53). The purpose of Dr. Eshkenazi's evaluation "was to ascertain whether or not [Plaintiff] is totally Disabled, as a result of his service with the Department of Veterans Affairs." (*Id.* at 551). Dr. Eshkenazi opined that Plaintiff is not able to be gainfully employed and that his condition is not likely to improve. (*Id.* at 553). The ALJ explained his assessment of Dr. Eshkenazi's opinion:

> Dr. Eshk[e]nazi opined that [Plaintiff] was "100% [d]isabled, and he is not able to be gainfully employed" (Ex. 13F, pg. 3). [Plaintiff] was noted to be able to manage funds, however (Id., pg. 3). As an opinion on an issue reserved to the Commissioner, this statement is not persuasive and is not given special significance pursuant to 20 CFR 404.1527(d) and 416.927(d). The objective clinical and diagnostic evidence used by the physician to come to that conclusion and included in the physician's report has been considered. This objective evidence is consistent with a finding that [Plaintiff] could do work with the functional limitations as determined herein. Moderate to marked limitations in understanding, remembering, and using information and social functioning were given, while no limitations on being aware of normal hazards and taking appropriate precautions and traveling to unfamiliar places or using public transit, were indicated (Id., pgs. 4-7). Absences over three times per month were suggested (Id., pg. 8). This opinion is not persuasive, as [Plaintiff's] activities of daily living and treatment record do not suggest marked limitations, with [Plaintiff] having

> no hospitalizations or intensive outpatient treatment, nor significant mental status findings in the contemporaneous treatment records detailed above.

(*Id.* at 36-37).

Plaintiff focuses his argument with respect to the opinion of Dr. Eshkenazi on the opinion's consistency with the opinions of Dr. Anderson and Dr. Slowik and inconsistency with the opinions of Dr. Bruni and Dr. Fassler.  But as noted, resolution of conflicts between the medical opinions of record is in the province of the ALJ.  Plaintiff's disagreement with the ALJ's determination is not a valid basis for remand.  *See Duffy v. Comm'r of Soc. Sec.*, No. 16-CV-985S, 2018 WL 4103180, at *4 (W.D.N.Y. Aug. 29, 2018) ("In short, Plaintiff simply disagrees with the ALJ's assessment of the evidence in the record, but such a disagreement does not amount to the absence of substantial evidence.").  Further, as explained above, Plaintiff's conservative treatment and activities of daily living are appropriate considerations in the context of medical opinion evidence assessments.  For these reasons, the Court finds no error in the ALJ's considerations.

### 4.  Dr. Bruni and Dr. Fassler

In April of 2019, Dr. Bruni opined that Plaintiff had no more than moderate limitations in any area of mental functioning and was capable of performing unskilled light work.  (Dkt. 5 at 78-90).  Dr. Fassler affirmed the opinion on reconsideration.  (*Id.* at 91-104).  The ALJ concluded that these opinions were persuasive for the following reasons:

> Initially, the opinions are well supported with citations to the record. Moreover, the opinion is consistent with his activities of daily living such as being independent with personal care, caring for animals and an ability to

drive.  Similarly, it is consistent with his largely intact mental examinations with conservative treatment.  As such, the opinions are persuasive.

(Dkt. 5 at 37).

In challenging the ALJ's reasoning, Plaintiff contends the ALJ misinterpreted the opinions and relied on improper criteria in his assessments of these opinions.  But as set forth herein, the ALJ assessed all of the medical evidence in accordance with the appropriate regulations and considered proper factors in reaching his determination.  As a result, the ALJ's written determination reflects that he carefully considered the evidence in the record, including all of the opinion evidence.  Further, it is clear to the Court how the ALJ arrived at the RFC, which is well-supported by the record.  Accordingly, remand for further administrative proceedings is not required on this basis.

### B.      Determination of RFC

In determining Plaintiff's RFC, the ALJ assessed Plaintiff capable of light work with regularly scheduled breaks of 15 minutes in the morning and afternoon and half-hour to hour midday, and limited to understanding, remembering, and carrying out simple routine tasks with regularly scheduled breaks at two-hour intervals. (Dkt. 5 at 31).  Plaintiff argues that in making this determination, the ALJ's decision rests on layperson speculation and lacked medical opinion evidence to support the finding.  Therefore, Plaintiff argues, the determination is not supported by substantial evidence.  (Dkt. 9 at 26-29).  In response, the Commissioner argues that the ALJ's reasoning is sufficiently set forth in his decision and the medical opinions and substantial evidence support the determination.  (Dkt. 12-1 at 21-26).  The Court agrees with the Commissioner.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence

- 17 -

available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id*.  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotations and citations omitted).  However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

Plaintiff argues that support for the ALJ's determination regarding breaks is not found in the administrative record before the ALJ.  Specifically, he contends that none of

- 18 -

the medical providers offering opinions opined as to the length of time Plaintiff would need to be off-task.  (Dkt. 9 at 27 ("None of these examining or reviewing medical sources expressed any opinion whatsoever concerning the length of time plaintiff would likely be off task or absent as a result of medically determinable impairments.")).  He contends therefore that the RFC requirement for breaks at 2-hour intervals was a creation of the ALJ's layperson determination based on cherry-picked evidence.

Contrary to Plaintiff's argument, two of the opinions found persuasive by the ALJ, state agency physicians Dr. Bruni and Dr. Fassler, opined that Plaintiff could perform light work with "normal breaks."  And the breaks set forth by the ALJ in the RFC do not stray from what are considered normal breaks for unskilled work.  *See Darcy v. Comm'r of Soc. Sec.*, No. 20-CV-4769 (JMA), 2023 WL 2035945, at *8 (E.D.N.Y. Feb. 16, 2023) ("This '2-hour intervals' limitation simply describes 'the customary breaks allowed in unskilled employment. . . .  Normal work breaks and meal periods split an eight hour workday into approximately two hour periods.") (quotation marks, quotations, and citations omitted)); *Ra'Jour B. v. Comm'r of Soc. Sec.*, No. 1:21-CV-868-DB, 2023 WL 5959193, at *10 (W.D.N.Y. Sept. 12, 2023) (requirement of one to two bathroom breaks "falls within the definition of normal breaks for most jobs" (citing Social Security Administration Program Operations Manual System ("POMS") DI 25020.010B(2)(a) (describing a normal job as having two breaks in addition to lunch))); *Brink v. Colvin*, No. 1:14-CV-00940 (MAT), 2017 WL 2531711, at *2 (W.D.N.Y. June 12, 2017) ("Normal work breaks and meal periods split an eight hour workday into approximately two hour periods."); *Morales v. Comm'r of Soc. Sec.*, No. 10 CIV. 8773 BSJ KNF, 2012 WL 124554, at *18 (S.D.N.Y.

Jan. 17, 2012) ("[T]he Social Security Administration's policy, [] provides that one of the mental abilities needed for any job is the 'ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure).'" citing POMS DI 25020.010)), *report and recommendation adopted*, 2012 WL 4793868 (S.D.N.Y. Oct. 9, 2012).

While Plaintiff may disagree with the ALJ's determination of his RFC, that does not mean that the ALJ was relying on his own lay opinion or improperly cherry-picking evidence, or that the RFC finding is not supported by substantial evidence.  As noted above, it is not the function of this Court to reweigh the evidence—so long as the ALJ's conclusions are supported by substantial evidence (which the Court has already found for the reasons set forth above), they must be affirmed.  *See Brault,* 683 F.3d at 448. Accordingly, Plaintiff's challenge to the RFC determination cannot serve as a basis for remand.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 28, 2023
        Rochester, New York